UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:24-CV-00063-EBA

JUDY PERKINS,                                                                                           PLAINTIFF,

V.                    **MEMORANDUM OPINION & ORDER**

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security,*                                              DEFENDANT.

*** *** *** ***

INTRODUCTION

Plaintiff, Judy Perkins, appeals the Social Security Commissioner's denial of her application for Disability and Disability Insurance Benefits (DIB). [R. 13]. Perkins alleges that the Administrative Law Judge (ALJ) improperly denied her disability benefits for two reasons: (1) the ALJ improperly disregarded the medical necessity of her cane for her Residual Functional Capacity (RFC); and (2) the ALJ improperly evaluated her subjective complaints. [*Id.*]. Perkins and the Commissioner filed briefs in support of their respective positions. [R. 13; R. 16]. Further, the time for Perkins to file a Reply has passed and no such brief has been filed. [*See* R. 5]. So, this matter is ripe for review. The Court will affirm the Commissioner's final decision for the reasons below.

FACTS AND PROCEDURAL HISTORY

Plaintiff Perkins was, on the alleged disability onset date, a 50-year-old woman with a high school education who previously worked as a food service manager, food service worker, and "a composite position consisting of a general inspector and a motor vehicle parts assembler." [R. 7 at

pgs. 209–10]. At the time of her application, Perkins alleged she was suffering from various impairments, including osteoarthritis of the knee, status post open reduction internal fixation of traumatic closed right tibial plateau fracture, ischemic heart disease, cardiomyopathy, and nonrheumatic mitral valve prolapse. [*Id.* at pg. 202]. As a result of these impairments, Perkins applied for disability benefits in November of 2021, wherein she alleged that her disability began on October 29, 2021. [*Id.* at pg. 199]. Around the time of her disability onset date, Plaintiff suffered from a tibial fracture that ultimately resulted in her undergoing two surgeries for treatment. [*Id.* at pg. 765]. The application was then denied on April 19, 2022, and was denied again upon reconsideration on September 7, 2022. [*Id.* at pg. 199].

Perkins then filed a request for a hearing before an ALJ on October 21, 2022. [*Id.*]. ALJ Michelle Wolfe held a telephonic hearing on the matter on June 15, 2023. [*Id.*]. During the hearing, Perkins testified about various issues, including her symptoms and pain associated with her medical impairments. [*See id.* at pgs. 150–167]. ALJ Wolfe issued her decision and found that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." [*Id.* at pg. 203 (citation omitted)]. In support of this finding, the ALJ specifically found that the medical record was "devoid of a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands." [*Id.* at pgs. 204–05]. The ALJ also found that Plaintiff's testimony on the severity and persistence of her symptoms were not supported by the medical record. [*See id.* at pgs. 206–07]. In addition, Wolfe determined that Perkins had the RFC to do light work with certain conditions and that while the claimant may not be able to perform past relevant work, there are jobs that exist in significant

number that she would be able to perform, such as cashier, ticket taker, and office helper. [*Id.* at pgs. 206–11]. Perkins then sought to have the Appeals Council review the ALJ's decision, but the Appeals Council denied this request for review on April 24, 2024. [*Id.* at pg. 5]. Because the Appeals Council declined review, the ALJ's decision became the Acting Commissioner of Social Security's final decision, which is subject to judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

Now, Perkins requests judicial review of ALJ Wolfe's decision. [R. 1]. She presents two issues in this appeal. *First*, Perkins argues that the ALJ erred by failing to properly evaluate the medical necessity of her cane. [R. 13 at pg. 6]. *Second*, Plaintiff asserts that the ALJ failed to properly consider her subjective complaints and improperly discounted her statements on the intensity and severity of her impairments. [*Id.* at pgs. 12–14].

STANDARD OF REVIEW

A court reviewing the Social Security Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It is important to note that where, as here, the Appeals Council declines

to review an Administrative Law Judge's decision, that decision becomes the final decision of the Commissioner for purposes of judicial review. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

A reviewing court owes the Commissioner great deference.[1] In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See id.* at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the Administrative Law Judge's decision must stand if supported by substantial evidence. *Id.*; s*ee also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, an ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)) (internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

---

[1] "Precisely because agency action often takes the form of determination of general statutory principles, agencies are often in the position of architects carrying out a commission whose broad goals have been set by Congress. Judges should thus afford agencies leeway to carry out the task of the architect." ADRIAN VERMEULE, COMMON GOOD CONSTITUTIONALISM 152 (2022).

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(4). The five steps are:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, if the ALJ reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's residual functional capacity, age, education, and past work experience. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

ANALYSIS

A

Perkins first argues that ALJ Wolfe improperly determined that she did not require a cane to ambulate and that the ALJ's failure to include that in her RFC assessment was in error. [R. 13 at pg. 8]. Perkins asserts that the ALJ failed to address her use of a cane and the impact it had on her RFC and that in her analysis, the ALJ ignored multiple instances in the medical record that indicated that Perkins' use of a cane was medically necessary. [*Id.* at pgs. 8–9]. Therefore, Perkins posits that if the cane had been considered in the ALJ's RFC determination, "the number of available jobs would have been substantially eroded, thus resulting in the Plaintiff being found disabled." [*Id.* at pg. 11]. The SSA, however, maintains that the ALJ properly found that Plaintiff's cane was not medically necessary because evidence in the record indicates that Perkins was able to ambulate without a cane and thus, "the ALJ reasonably did not include the need for a cane in her RFC finding." [R. 16 at pgs. 4–6].

With respect to whether a cane should be considered in an RFC determination:

> [T]he Sixth Circuit has held that if a cane is not a necessary device for the claimant's use, it cannot be considered a restriction or limitation on the plaintiff's ability to work. *Carreon v. Massanari*, 51 Fed.Appx. 571, 575 (6th Cir.2002). This device must be so necessary that it would trigger an obligation on the part of the Agency to conclude that the cane is medically necessary. *Penn v. Astrue*, 2010 WL 547491, at *6 (S.D. Ohio Feb.12, 2010). A cane would be medically necessary if the record reflects more than just a subjective desire on the part of the plaintiff as to the use of a cane. *Id.* If the ALJ does not find that such device would be medically necessary, then the ALJ is not required to pose a hypothetical to the VE. *Casey v. Sec'y of Health Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). The ALJ is only required to pose to the VE those limitations found to be credible. *Id.*

*Murphy v. Astrue*, No. 2:11-CV-00114, 2013 WL 829316, at *10 (M.D. Tenn. Mar. 6, 2013), *report and recommendation adopted sub nom. Murphy v. Colvin*, No. 2:11-CV-00114, 2013 WL 4501416 (M.D. Tenn. Aug. 22, 2013). In other words, "courts have generally required medical

evidence specifically describing the circumstances for which an assistive device is needed. Without that specific documentation, courts will find that the plaintiff has not met their burden of proof at Step 3." *Javinsky-Olthoff v. Comm'r of Soc. Sec.*, No. 2:21-CV-11012, 2022 WL 5059927, at *4 (E.D. Mich. Aug. 9, 2022), *report and recommendation adopted sub nom. Javisnky-Olthoff v. Comm'r of Soc. Sec.*, No. 21-11012, 2022 WL 4096863 (E.D. Mich. Sept. 7, 2022) (citations omitted). Further, courts in the Sixth Circuit have found that subjective evidence is not sufficient to establish that a walking device is medically necessary and "[w]here the medical record shows that the use of an assistive device is something less than 'necessary,' or the medical record merely infers the use of an assistive device without stating that it is medically necessary, courts have upheld findings that an assistive device was not medically necessary." *Id.* (citations omitted). However, "[w]here an ALJ ignores evidence that a claimant cannot ambulate effectively and focuses monocularly on evidence of a claimant walking without an assistive device, courts have held that the ALJ's decision was not based on substantial evidence." *Id.* at *5 (citations omitted).

Here, as previously stated, Perkins suffered from a tibial fracture in October of 2021 that required two surgeries to treat. [R. 7 at pg. 765]. As a result, Perkins did require an assistive device to ambulate after her surgeries but was later permitted to allow full-weight-bearing on her leg during her physical therapy. [*Id.* at pg. 207]. There is no question that Perkins has used a cane since as evidenced by her medical records and her own testimony. [*See id.* at pgs. 162–63, 917]. ALF Wolfe, however, found that the cane was not a medical necessity based on the following:

> [T]he record does not support the finding that the claimant has chronic joint pain or stiffness with abnormal motion, instability, or immobility of the affected joints with physical examination or diagnostic imaging showing anatomical abnormality of the affected joints and impairment-related physical limitation of musculoskeletal functioning that has lasted of is expected to last for twelve consecutive months with at least one of the following: documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled or seated mobility device involving the use of both hands; an inability to use one upper extremity to independently initiate,

sustain, and complete work-related activities involving fine and gross movements and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled or seated mobility device involving the use of one hand; or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements. At the consultative examination in March 2022, the claimant was able to ambulate without the use of an assistive device; had steady gait and stable station; had 5/5 strength throughout, including bilateral grip strength; had good manual dexterity and was able to make a tight fist bilaterally; and could walk on her tip toes and heels and perform tandem walking (Exhibit 10F).

[*Id.* at pg. 204]. The ALJ also made similar findings with respect to Plaintiff's tibia fracture and other musculoskeletal impairments and again referred to Perkins' March 2022 examination to support her finding that her cane was not medically necessary. [*Id.* at pg. 205]. Plaintiff maintains that the ALJ's conclusion that Plaintiff's cane is not medically necessary is erroneous. [R. 13 at pg. 8]. Specifically, Plaintiff references multiple instances in the record that indicate that Plaintiff had reduced knee strength, difficulty walking, weakness in her legs, and that she was instructed to use her cane as needed. [*Id.* at pg. 9]. The SSA, however, maintains that the evidence in the record supports the ALJ's finding that Perkins' cane was not medically necessary. [R. 16 at pg. 6].

During the hearing, and as acknowledged by the ALJ in her opinion, Perkins testified that she had been prescribed a wheelchair and walker to help with her ambulation and that she would use the walker and cane at home when her symptoms flared up. [R. 7 at pgs. 162–63, 206]. Further, after her surgeries to treat her tibia fracture, Perkins remained non-weight-bearing until February of 2022, when she was sent to physical therapy and allowed to proceed to full-weight-bearing. [*See id.* at pgs. 748–56]. Perkins' physical therapy notes from March 23, 2022, indicate that she was able to ambulate with a walker, but that decreased strength and other issues contributed to her gait deviations. [*Id.* at pg.

785]. However, a few days later on March 28, 2022, Plaintiff's records show that her "gait is steady. She is stable at station. She can ambulate without an assisted device. She can transfer on and off the exam table without assistance. Muscle strength testing was 5/5 in all muscle groups. She can walk on her tip toes and heels. She was able to do tandem walking." [*Id.* at pg. 768]. Her physical therapy records through March and April of 2022 indicate gradual progress with regaining her normal gait and strength while still noting on March 30, 2022, that an assistive device was still a necessity for Perkins to ambulate. [*See id.* at pgs. 791–800]. On April 20, 2022, Perkins' physical therapist noted that she was ambulating with a cane and that she was continuing to display weakness in her affected leg. [*Id.* at pgs. 799–800]. By June of 2022, however, Plaintiff's medical records indicate that her gait was normal, that she had intact range of motion and full muscle strength, and the records do not indicate she was using a cane at this time. [*Id.* at pg. 775]. Finally, by March of 2023, Plaintiff reported to her providers that while she still experienced pain in her legs and some issues walking, she did not report having to use a cane to ambulate. [*Id.* at pg. 846]. However, it was noted that Perkins was using a cane to assist in ambulating in April of 2023. [*See id.* pg. 917].

Plaintiff's medical records indicate continuing issues with ambulation and pain and weakness in her legs. However, Perkins has been unable to produce any evidence in the record that her cane is a medical necessity and thus should have been considered in the ALJ's RFC analysis. As previously stated, when the records show that the use of an assistive device is less than necessary or merely infers its use without stating its necessity, it is not error for the ALJ to find that the assistive device is not medically necessary. *See Javinsky-Olthoff*, 2022 WL 5059927 at *4. Again, ALJ Wolfe did discuss this issue in her

opinion and found that, based on the records, Plaintiff had not demonstrated that she required a cane to ambulate. [*See* R. 7 at pgs. 204–05]. Perkins has not proven that the ALJ's findings were not support by substantial evidence. At the very least, Perkins has been unable to provide "medical evidence specifically describing the circumstances for which an assistive device is needed" and has thus failed to satisfy that burden of proof. *Javinsky-Olthoff*, 2022 WL 5059927 at *4. Accordingly, this argument must fail.

B

Next, Perkins claims that ALJ Wolfe failed to properly assess her credibility and subjective complaints and testimony about her symptoms and medical impairments. [R. 13 at pg. 11]. Specifically, Perkins argues that the ALJ erred by finding that her testimony was not consistent with the medical record and did not provide an adequate basis for her decision to discount her testimony. [*See id.* at pgs. 11–15]. The SSA, however, argues that the ALJ properly explained the basis for her decision and provided sufficient evidence from the medical record to support her finding that Perkins' subjective complaints were not consistent with her medical records. [R. 16 at pgs. 7–9].

As part of the RFC assessment, the ALJ may consider evidence beyond the findings contained in the medical record, including statements and subjective complaints from the applicant themselves. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304. As the Sixth Circuit has explained:

> It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981). However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96–7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their

> intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247–48 (6th Cir. 2007). Further, "[a]ppellate courts generally defer to an ALJ's credibility determination because '[t]he opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.'" *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 531 (6th Cir. 2014) (quoting *Beavers v. Sec. of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978)). Finally, the Court can also consider factors such as the applicant's daily activities, the location and duration of their symptoms, precipitating and aggravating factors, and other factors that affect their pain and functional limitations when analyzing this issue. *See* 20 C.F.R. § 416.929(c)(3).

.       Here, Perkins testified at the hearing before ALJ Wolfe that she was suffering from various medical issues, including an inability to squat, leg swelling, hypertension, sleep apnea, and neck and back pain. [R. 7 at pgs. 154, 157, 164–65]. In her opinion, however, ALJ Wolfe explained that "the claimant's determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [*Id.* at pgs. 206–07]. The ALJ then described multiple instances in the medical record that indicated Plaintiff's physical examinations

were generally within normal ranges, that her gait was normal and her leg strength was improving, and that her cardiac function was within normal limits. [*See id.* at pgs. 207–08]. Further, Perkins' own statements in the medical record support the ALJ's findings. Specifically, Plaintiff told her physical therapist multiple times that she was able to work in her garden and walk around for long periods of time. [*See id.* at pgs. 809, 810, 820]. Indeed, by July of 2022, Plaintiff reported that she felt she was "90% better compared to before injury." [*Id.* at pg. 839]. These records thus demonstrate that the records do not fully support Perkins' complaints and testimony on the severity of her symptoms and impairments and therefore support the ALJ's findings on this issue.

To be sure, the records do indicate that evidence exists to the contrary finding, but as the Sixth Circuit has explained in the past, "[w]hile the record contains conflicting evidence that would suggest further limitations, under the substantial evidence standard, 'administrative findings 'are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.'" *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (quoting *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009)). Again, the Court's role is to not resolve conflicts in evidence or decide questions of credibility and "[i]f the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.2005)). The record and the ALJ's opinion demonstrate that substantial evidence exists to support her findings and conclusions, thus this argument must also fail.

## CONCLUSION

Judy Perkins appealed the Acting Commissioner's final decision that she is not entitled to disability insurance benefits. Perkins argues that the ALJ's determination that her cane was not a

medical necessity and her discounting of her subjective complaints and testimony necessitate a reversal of the ALJ's decision. But the record indicates that there is substantial evidence to support the ALJ's findings that Perkins' cane is not a medical necessity and that her subjective complaints and testimony are not consistent with the medical record. Plaintiff has failed to satisfy her burden of proof to warrant a reversal of ALJ Wolfe's decision. The Commissioner's final decision is therefore AFFIRMED. A separate judgment will follow.

    Signed January 9, 2025.



**Signed By:**
*Edward B. Atkins*  *EBA*
**United States Magistrate Judge**